# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HENRY LEE DON WALKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. CIV-10-001-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Henry Lee Don Walker requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born February 25, 1977, and was thirty-one years old at the time of the administrative hearing (Tr. 24, 114). He has a ninth-grade education and vocational training in the electrical field (Tr. 136). His past relevant work (PRW) was as a tire tech, car salesman, electrician apprentice, auto mechanic, and chicken de-boner (Tr. 52). The claimant alleges that he has been unable to work since July 7, 2007 because of carpal tunnel and problems with his back and feet (Tr. 132).

**Procedural History**

The claimant applied on July 24, 2007 for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 114-22). His applications were denied. ALJ Jeffrey S. Wolfe held an administrative hearing and determined the claimant was not disabled in a written opinion dated July 13, 2009 (Tr. 7-18). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ found that the claimant met the insured status through March 31, 2009 (Tr. 10). The ALJ made his decision at step four of the sequential evaluation. He found that, in light of the claimant's severe impairments of carpal tunnel syndrome, pes cavus (*i. e.*, high arch or high instep), and obesity, claimant had the RFC to perform the full

range of light work light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, he could lift 20 pounds occasionally or 10 pounds frequently, and the ability to stand/walk/sit for 6 hours in an 8-hour workday (Tr. 14). The ALJ thus concluded that the claimant could return to his past relevant work of either car salesman or chicken deboner and was therefore not disabled (Tr. 17-18).

## Review

The claimant contends the ALJ erred by failing to include in his RFC restrictions arising from his carpal tunnel syndrome and pes cavus. Because the ALJ did not include the claimant's severe impairment in his RFC assessment, the decision of the Commissioner must therefore be reversed.

The claimant testified at the administrative hearing that he began having foot problems when he was nineteen years old, and they have progressively worsened to the point that he now has painful marble-sized calluses on his big toes and pea-sized calluses on his smaller toes; however, he does not have any trouble walking (Tr. 33-34). He further testified that he has had problems with his hands since he was eighteen years old, and that the problems have increased with time and include the following: his fingers go numb and "feel like they're on fire" when he uses them "probably 70 percent of the day," but not if he uses them less than "30 percent of the day" (Tr. 37-39). In addition, the claimant testified that he occasionally struggles to grip heavy objects; that he sometimes has to wear shoes that do not require laces if he is having problems with his hands; that he can retrieve a gallon of milk most of the time; and that he loses grip strength when driving "over 30 minutes or an hour" (Tr. 41-42). Last, the claimant stated that he could

stand approximately thirty to forty-five minutes at a time, depending on his feet, and he thought he could be on his feet an approximate total of two hours out of an eight-hour workday (Tr. 45-46).

Consultative examiner Dr. Ronald Schatzman performed an assessment of the claimant on September 6, 2007, noting ailments of pes cavus, carpal tunnel syndrome needing surgery, exogenous obesity, and back pain (Tr. 178-80). Specifically, Dr. Schatzman stated that both the claimant's wrists were positive for carpal tunnel syndrome, and that he "would benefit and possibly have a complete cure" with surgery, but that his heel/toe walking and gait were within normal limits (179-80). The state agency medical consultant found that the claimant could work at a light exertion, and that his pain was credible (Tr. 186). Following the administrative hearing, the ALJ ordered a further consultative examination, as well as radiology reports on the claimant's feet and ankles. Dr. Joseph Sutton, II, performed the second consultative examination, finding that the claimant could stand for one hour at a time, but that he could sit for eight hours and stand or walk for "perhaps four to six hours and maybe even more than this"; that he should have no restrictions as to foot controls; that he would be restricted to "at least occasional activities" as to handling and fingering, but could frequently feel; and that vibrations might aggravate the claimant's carpal tunnel syndrome (Tr. 238-39). As relevant, his impression was that the claimant had bilateral carpal tunnel syndrome, and foot calluses with a diagnosis of flat feet (Tr. 238). The radiology report came back normal for claimant's feet and ankles (Tr. 229-30).

In his RFC assessment, the ALJ did not specifically address the evidence as to the claimant's carpal tunnel syndrome. He restated Dr. Schatzman's assessment of the claimant (*i. e.,* carpal tunnel in need of surgery), but included only Dr. Sutton's statements that the claimant could feel frequently, and not the suggested restrictions as to handling and fingering. Instead, the ALJ focused on the radiology report and Dr. Sutton's findings as to the claimant's feet to "corroborate the conclusion that there are no objective orthopedic findings supportive of his complaints" (Tr. 17). He therefore found that the claimant's complaints as to both hand and foot pain were unpersuasive, especially in light of the claimant's employment history of manual labor (Tr. 17).

Although the ALJ found the claimant's carpal tunnel syndrome constituted a severe impairment at step two, he failed to included any limitations on the claimant's use of his hands in the RFC assessment at step four (Tr.14-17). An explanation should be provided when, as here, an impairment found to be severe at step two is determined to be insignificant in later stages of the sequential evaluation. *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five.") [unpublished opinion]; *see also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion]. As the ALJ explained why the claimant's complaints of foot pain had been discredited, he should have also explained why the claimant's carpal tunnel

syndrome did not call for corresponding physical limitations to his hands in the RFC; however, he failed to discuss Dr. Sutton's restriction "to at least occasional activities with regards to handling and fingering" (Tr. 238). Although the ALJ *did* mention Dr. Schatzman's assessment that the claimant had carpal tunnel syndrome in need of surgery, the ALJ largely relied on the opinions of the state agency examiner and Dr. Sutton to find that the claimant's allegations of hand and foot pain were not credible. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir 1984). The ALJ should have explained why he rejected the probative evidence from Dr. Sutton's assessment as to handling and fingering restrictions because the chicken deboner position (which he found the claimant could return to) requires constant reaching, handling, and fingering (SCODICOT § 525.687-066), and the car salesman position (which he found the claimant could return to) requires frequent reaching and handling, as well as occasional fingering (SCODICOT § 273.353-010).

Because the ALJ failed to explain how the claimant's severe impairment of carpal tunnel syndrome at step two became so insignificant as to require no limitations in his RFC at step four, the Commissioner's decision must be reversed and the case remanded to the ALJ for further analysis. If such analysis on remand results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 25th day of March, 2011.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma